Sadé A. Turner, #11181
Karmen Schmid, #13583
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, Utah  84111
Telephone:  (801) 532-7080
Facsimile:  (801) 596-1508
sturner@strongandhanni.com
kschmid@strongandhanni.com

*Attorneys for Plaintiff Amica Mutual Insurance Company*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMICA MUTUAL INSURANCE COMPANY<br><br>          Plaintiff,<br>vs.<br><br>RICHARD BRANDON FRANK, an individual; SARAH FRANK, an individual; SMR LLC, a Utah Limited Liability Company; and Richard Brandon Frank, doing business as: SMR, LLC, as Trustee of the 64K Trust, dated the 15th of January, 2015; SMR, LLC, as Trustee of the CA Trust, dated January 5, 2015; SMR, LLC, as Trustee of the SB Trust dated December 29, 2014; SMR, LLC, as Trustee of the E-36 Trust, dated July 15, 2015; SMR, LLC, as trustee of the LR Trust, dated January 22, 2015; and SMR, LLC, as Trustee of the LAM 5 Trust, dated February 2, 2015.<br><br>          Defendants. | **AMICA MUTUAL INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>Case No.:<br>Judge: |

Plaintiff Amica Mutual Insurance Company, hereby complains and alleges against

Richard Brandon Frank, an individual; Sarah Frank, an individual; SMR LLC, a Utah limited liability company; and Richard Brandon Frank, doing business as: SMR, LLC, as Trustee of the 64K Trust, dated the 15th of January, 2015; SMR, LLC, as Trustee of the CA Trust, dated January 5, 2015; SMR, LLC, as Trustee of the SB Trust dated December 29, 2014; SMR, LLC, as Trustee of the E-36 Trust, dated July 15, 2015; SMR, LLC, as trustee of the LR Trust, dated January 22, 2015; and SMR, LLC, as Trustee of the LAM 5 Trust, dated February 2, 2015.

## **JURISDICTION**

1.     This case presents questions and controversies related to whether insurance coverage should be provided in connection with a third-party complaint that has been filed against Richard Brandon Frank and SMR, LLC, in the Third Judicial District Court, Salt Lake County, State of Utah, Civil No. 170903466, subsequently consolidated with Civil No. 160904994 (Underlying Action).

2.     Amica Mutual Insurance Company (Amica) seeks relief as set forth below, including declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201-2202.

3.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship as between Amica and all Defendants, and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4.     Amica is a mutual insurer and incorporated in Rhode Island, with its principal pace of business in Lincoln, Rhode Island, and is authorized to conduct insurance-related activities in the State of Utah.  Amica is a citizen of Rhode Island is not a citizen of Utah.

2

5.     Amica is informed and believes and thereon alleges that defendant Richard Brandon Frank (Frank) resides in Salt Lake County, Utah with intent to remain in Utah indefinitely, and that Frank is not a citizen of Rhode Island.

6.     Amica is informed and believes and thereon alleges that defendant Sarah Frank (Mrs. Frank) resides in Salt Lake County, Utah with intent to remain in Utah indefinitely, and that Frank is not a citizen of Rhode Island.

7.     Amica is informed and believes and thereon alleges that Defendant SMR, LLC (SMR) is a Utah limited liability company, registered to do business in Utah.  SMR's only two members are Richard Brandon Frank and his wife Sarah Frank, both of whom reside in Utah with the intent to retain in Utah indefinitely.  Thus, SMR is a citizen of Utah, and it is not a citizen of Rhode Island.

8.     Amica is informed and believes and thereon alleges that Defendant Frank is doing business as an unincorporated and unregistered entity named SMR, LLC, which entity purports to be a Trustee of the following entities:  64K Trust, dated the 15th of January, 2015; CA Trust, dated January 5, 2015; SB Trust dated December 29, 2014; E-36 Trust, dated July 15, 2015; LR Trust, dated January 22, 2015; and SMR LLC, as Trustee of the Lam 5 Trust, dated February 2, 2015.  The citizenship of Defendant Frank and SMR, as trustee, is set forth previously.

9.     Mrs. Frank has not been named individually as a party to the lawsuits listed below.

10.     Amica asserts that the alleged damages as set forth in the third-party complaint against Defendants in the Underlying Action – for which Amica could be held responsible to

3

indemnify should liability and coverage be found – are in excess of $75,000 exclusive of interest and costs based on: (1) the complaint against Defendants allege that it is a Tier 2 case, which means that the Underlying Action involves a claim of damages in the amount of $50,000 to $150,000; (2) the $75,000 jurisdictional minimum is further satisfied in view of the defense obligation at issue in this declaratory judgment action, i.e., the value of the attorney's fees and defense expenses for which Amica is responsible (if coverage is found) in defending its insureds in the Underlying Action, which is expected to be in the tens of thousands of dollars.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because the Defendants are residents and citizens of Utah and the applicable insurance policies were issued in Utah.

## GENERAL FACTUAL ALLEGATIONS

12.     On June 16, 2017, Hi-Country Estates Homeowners Association, Phase II (HCEII) filed a third-party complaint (Underlying Complaint) against Frank and SMR in the Underlying Action.  (*See* Underlying Complaint, attached as Exhibit A.)  In the Underlying Complaint, HCEII alleged sixth causes of action against Frank and SMR, including (1) Intentional Interference with Contractual Relations; (2) Intentional Interference with Existing and Prospective Economic Relations; (3) Slander of Title; (4) Defamation; (5) breach of Contract and Enforcement of Amounts Owed Pursuant to Utah Community Association Act; and (6) Foreclosure of Liens.

13.     The prayer for relief in the Underlying Complaint includes a request for punitive damages and attorneys' fees.

14.     The Underlying Complaint alleges that Frank, by and through various trusts and individuals personally and/or professional affiliated with Mr. Frank, have ownership interests in "several lots" within HCEII. The Underlying Complaint alleges that Frank, the various trusts, and individuals with whom Mr. Frank was personally and/or professional affiliated are many years delinquent in paying homeowners association (HOA) dues and assessments on the lots and instead of paying for those assessments and dues "Frank has made it his goal to attempt to dissolve the HOA and has taken many actions in order to try and achieve this result."

15.     The Underlying Complaint alleges that Mr. Frank has posted signs to get others to sign a petition to dissolve the HOA, created websites such as www.DissolveHOA.com, www.UnlockOurPropertyValues.com, and www.HCE2info.com, made allegations of forgery and fraud to the police and the Herriman City Precinct Office, circulated a letter regarding his petition to dissolve the HOA, mailed post cards and letters to other HOA members making representations of the value of the HOA land and the advantages of dissolving the HOA, sent an undocumented letter allegedly from Utah State University regarding land values, spoke at City Council Meetings about allegedly false support to dissolve the HOA,  gave individuals permission to trespass on HOA property, told other homeowners the HOA was improperly seeking assessments from them causing them not to pay the assessments, and filed a declaration on the part of the HCEII landowners seeking to reassert claims dismissed against HCEII in a prior lawsuit.  (*See Ex.* A at ¶¶ 10-31.)

16.     The Underlying Complaint alleges that Frank is the owner of SMR which operates a Trust for certain lots within HCEII as follows:

(i)  64K Trust owns property within the HOA located at 14881 Shaggy Mt Road (Lot 42) which owes $1,433.06 in assessments, fees, and arrears;

(ii)  CA Trust owns property within the HOA located at 7822 W. Country View (Lot 30) which owes $1,889.58 in assessments, fees, and arrears;

(iii)SB Trust owns property within the HOA located at 7841 W. Mountain Top (Lot 25A) which owes $1,889.58 in assessments, fees, and arrears;

(iv)E-36 Trust owns property within the HOA located at 8051 W. Step Mt. Country View (Lot 117) which owes $1,901.65 in assessments, fees, and arrears;

(v)  LR Trust owns property within the HOA located at 7901 Country View (Lot 35) which owes $1,901.69 in assessments, fees, and arrears;

(vi)LAM Trust owns property within the HOA located at 8115 Step Mountain Road (Lot 118-B) which owes $1,941.61 in assessments, fees, and arrears.

(Ex. A, ¶¶ 32-47.)

17.    The Underlying Complaint further alleges the HOA has had to retain an attorney to represent it in an action to enforce the assessments and the Bylaws allow interest at the rate of 8.25% per year.  (Ex. A, ¶ 47-48.)

## INSURANCE POLICIES

### a.  Homeowners Policy

18.    Amica issued a homeowners policy to Mr. and Mrs. Frank, with personal liability limits of $300,000.00, policy no. 68054320CH.  A certified copy of the policy period which was in effect May 18, 2017 to May 18, 2018, is attached hereto as Exhibit B.

19.    The Homeowners Policy contains the following relevant coverage terms:

**SECTION II – LIABILITY COVERAGES**

**A. COVERAGE E – PERSONAL LIABILITY**

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

    1.    Pay up to our limit of liability for the damages for which an insured is legally liable. Damages include prejudgment interest awarded against an insured; and

    2.    Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the occurrence has been exhausted by payment or a judgment or settlement.

(Ex. B, at p. AMICA 000029.)

    **D.**    **Loss Assessment**

    1.    We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the residence premises during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

    a.    **Bodily injury** or **property damage** not excluded from coverage under Section II Exclusions; or

    b.    Liability for an act of a director, officer, or trustee in the capacity as a director, officer or trustee, provided such person:

    (1)    is elected by the members of a corporation or association of property owners; and

    (2)    Serves without deriving any income from

7

the exercise of duties which are solely on behalf of a corporation or association of property owners.

\*       \*       \*

3.      Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a.      One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b.      A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

(Ex. B,  p. AMICA 000033.)

20.     The Homeowners Policy contains the following relevant exclusions:

\*       \*       \*

**SECTION II – EXCLUSIONS**

**2. Exclusions**

**E.      Coverage E – Personal Liability and Coverage F – Medical Payments to Others.**

Coverages E and F do not apply to the following:

**1.      Expected or Intended Injury**

Bodily injury or property damage which is expected or intended by an insured even if the resulting bodily injury or property damage:

a.      Is of a different kind, quality or degree than initially expected or intended; or

8

b.      Is sustained by a different person, entity or property than initially expected or intended.

**2.      Business**

a.      Bodily injury or property damage arising out of or in connection with a business conducted from an insured location or engage in by an insured, whether or not the business is owned or operated by an insured or employs an insured.

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstances, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.

**3.      Professional Services**

Bodily injury or property damage arising out of the rendering of or failure to render professional services…

*        *        *

(Ex. B, at p. AMICA 000031.)

**F.      Coverage E – Personal Liability**

Coverage E does not apply to:

1.      Liability:

a.      For any loss assessment charged against you as a member or an association, corporation or community of property owners, except as provided in D. Loss Assessment under Section II – Additional Coverages.

b.      Under any contract or agreement entered into by an insured. However, this exclusion

9

does not apply to written contracts:

(1)    That directly relate to the ownership, maintenance or use of an insured location: or

(2)    Where the liability of others is assumed by you prior to an occurrence;

\*     \*     \*

(Ex. B at p. AMICA 000032.)

**Amendatory Endorsement**

**SECTION II – EXCLUSIONS**

The following exclusion is added in all forms and Endorsement HO 24 73:

We do not provide coverage for: fines, penalties, double or treble damages; punitive, exemplary or vindictive damages; or any other type of added damages intended to punish or deter wrongful conduct rather than as compensation for actual damages.

(Ex. B at Endorsement p. 2 of 2.)

21.    The Homeowners Policy contains the following relevant definitions:

2.    **"Bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death and results.

3.    **"Business"** means:

a.    A trade, profession or occupation engage in on a

10

full-time, part-time or occasional basis; or

b.     Any other activity engaged for money or other compensation, except the following:

1.     One or more activities, not described in 2 to 4 below, for which no insured receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

2.     Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

3.     Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

4.     The rendering of home day care services to a relative of an insured.

\*     \*     \*

8.     **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

9.     **"Property damage"** means physical injury to, destruction of, or loss of use of tangible property.

\*     \*     \*

(Ex. B at p. AMICA 000013-14.)

     **b.  *Umbrella Policy***

22.     Amica also issued a personal umbrella policy to Mr. and Mrs. Frank, policy no. #7807432015 (Umbrella Policy), with liability limits of $2,000,000.00 in excess of the underlying insurance.  A certified copy of the policy period which was in effect July 1, 2017 to July 1, 2018, is attached hereto as Exhibit C.

23.     The Umbrella Policy contains the following relevant coverage terms:

**SECTION I –COVERAGES**

**A.     INSURING AGREEMENT**

We will pay damages, in excess of the "retained limit", for:

1.      "Bodily injury" or "property damage" for which an insured becomes legally liable due to an "occurrence" to which this insurance applies; and

2.      "Personal injury" for which an "insured" becomes legally liable due to one or more offenses listed under the definition of "personal injury" to which tis insurance applies.

Damages include prejudgment interest awarded against the "insured."

**B.     DEFENSE COVERAGE**

1.      If a claim is made or a suit is brought against an "insured' for damages because of "bodily injury" or property damage caused by an "occurrence" or "Personal injury" caused by an offense to which this policy applies, we:

a.      Will provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. However, we are not obligated to defend any suit or settle any claim if:

1.      The "occurrence" is covered by other "underlying insurance" available to an "insured"; or

2.      There is no applicable "underlying insurance" in effect at the time of the "occurrence" or offense and the amount of damages claimed or insured is less than the applicable deductible shown in the Declarations.

(Ex. C at p. AMICA000078.)

*        *        *

**D.      LIMIT OF LIABILITY**

Our total liability under this policy for all damages resulting from any one "occurrence" or offense will not be more than the limit of liability as shown in the Declarations of this policy. This limit is the most we will pay regardless of the number of "insured", claims made, persons injured, or vehicles involved in an accident.

(Ex. C at p. AMICA000079.)

*        *        *

**Loss Assessment**

1.      We will pay for your share of loss assessment charged against you, as owner or tenant of a residence premises, during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

a.      "Bodily injury" or "property damage" not excluded from coverage under Section III Exclusions.

For assessments made as a result of "property damage" to property owned by the "insured", the assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by an "underlying insurance" policy if owned by you other than losses caused by:

(1)      Earthquake; or

13

      (2)    Land shock waves or tremors before, during or after a volcanic eruption.

    b.    Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1)    Is elected by the members of a corporation or association of property owners; and

      (2)    Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2.    Regardless of the number of assessments, the policy limit is the most we will pay for loss arising out of:

    a.    One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

    b.    A covered act of a director, officer or trustee.  An act involving more than one director, officer or trustee is considered to be a single act.

3.    We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

(Ex. C, PUP Policy Amendment at AMICA000086-87.)

\*     \*     \*

24.    The Umbrella Policy contains the following relevant exclusions:

**SECTION III – EXCLUSIONS**

**2. Exclusions**

**A.**    The coverages provided by this policy do not apply to:

    1.    "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the

14

resulting "bodily injury" or "property damage":

a.    Is of a different kind, quality or degree than initially expected or intended; or

b.    Is sustained by a different person, entity, real or personal  property, than expected or intended…

\*     \*     \*

2.    "Personal injury":

a.    Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury":

b.    Arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity….

e.    Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the "insured";

f.    Arising out of publication of material in any electronic format.

(Ex. C at p. AMICA000079 as amended by Policy Amendment at p. AMICA000087.)

3.    "Bodily injury", "personal injury" or "property damage" arising out of or in connection with a "business":

a.    Engaged in by an "insured"; or

b.    Conducted from:

(1)    Any part of a premises owned by or rented to an "insured"; or

15

         (2)     Vacant land owned by or rented to an "insured".

The Exclusion (A.3) applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owned or implied to be provided because of the nature of the "business".

(Ex. C, at pp. AMICA000079-80, as amended by Policy Amendment at p. AMICA000087.)

\*      \*      \*

5.    "Bodily injury", "personal injury" or "property damage" arising out of the rendering of or failure to render professional services;

\*      \*      \*

15.    "Bodily injury", "personal injury" or "property damage" arising out of an act or omission of an "insured" as an officer or member of a board of directors of a corporation or organization. However, this Exclusion (A.15) does not apply if the corporation or organization is not-for-profit and the "insured" receives no compensation other than reimbursement of expenses.

(Ex. C at p. AMICA000080-81.)    \*      \*      \*

**The following exclusion is added:**

We do not provide coverage for: fines, penalties, double or treble damages; punitive, exemplary or vindictive damages; or any other type of added damages intended to punish or deter wrongful

conduct rather than compensation for actual damages.

(Ex. C, Policy Amendment at p. AMICA000088.)

25.     The Umbrella Policy contains the following relevant definitions:

**I.     Definitions**

A.     Through this policy, "you" and "your" refer to:

1.     The "named insured" shown in the Declarations; and

2.     The spouse if a resident of the same household.

F.     "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

G.     "Business" includes

1.     Trade, profession, commercial enterprise, or occupation engage in on a full-time, part-time or occasional basis; or

2.     Any other activity engage in for money or other compensation, except the following:

a.     One or more activities, not described in b. through d. below, for which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

b.     volunteer activities for which no money is receive other than payment for expenses incurred to perform the activity;…

\*     \*     \*

J.      "Insured" means:

1.      You

2.      A "family member…"

(Ex. C, at AMICA000076-77.)

\*     \*     \*

K.      "Occurrence" means an accident or offense including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in:

1.      "Bodily injury";

2.      "Property damage"; or

3.      "Personal injury".

(Ex. C, at p. AMICA000086.)

\*     \*     \*

L.      "Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:…
                    \*     \*     \*
2.      Malicious prosecution;
                    \*     \*     \*

4.      Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5.      "Oral or written publication of material that violates a person's right of privacy.

18

An offense includes continuous or repeated exposure to substantially the same general harmful conditions, which results in "personal injury", during the policy period.

(Ex. C, at pp. AMICA000077-78 and PUP Policy Amendment at p. AMICA000086.)

      M.    "Property damage" means physical injury to, destruction of, or loss of use in tangible property.

(Ex. C, at p. AMICA000078.)

## CLAIM FOR DELCARATORY RELIEF

26.     On September 18, 2017, Amica issued a reservation of rights letter to Mr. Frank and Ms. Frank.  (*See* Reservation of Rights, attached as Exhibit D.)  An updated reservation of rights letter was sent on October 12, 2017.  (*Id.*) Amica has been defending Frank subject to a reservation of rights, as outlined in the reservation of rights letters.

27.     Amica determined that the causes of action in the Underlying Complaint for Slander of Title and Defamation, potentially qualified as a "personal injury" under the terms of the Umbrella Policy, and has been defending Frank and SMR in the Underlying Action for that reason.  On October 11, 2019, the court in the Underlying Action dismissed the causes of action for Slander of Title and Defamation.  (*See* Order of Dismissal, attached as Exhibit E.)  The court also dismissed the causes of action for Intentional Interference with Existing and Prospective Economic Relations, and Intentional Interference with Contractual Relations.

28.     Amica asserts and alleges that the remaining causes of action against Frank and SMR do not trigger a duty to defend or indemnify Frank and SMR, in the Underlying Action, either individually, as DBAs or as trustees as any entity. Amica also does not have a duty to

indemnify Ms. Frank against any judgment or award.  Specifically, the claims for (1) breach of Contract and Enforcement of Amounts Owed Pursuant to Utah Community Association Act; and (2) Foreclosure of Liens are the only remaining causes of action against Frank and SMR.  None of these claims qualifies as a "personal injury" under the terms of the Policies.

29.     Additionally, coverage under the Homeowners Policy and Umbrella Policy (Policies) has not been triggered because the Underlying Complaint contains no allegations of "bodily injury" or "property damage" giving rise to an "occurrence" as defined under the Policies.

30.     Additionally, Mr. and Mrs. Frank are the named insureds under the Policies and Amica has no duty to defend or indemnify SMR against the Underlying Action.

31.     Additionally, certain exclusions in the Policies apply or may apply to exclude coverage.  These exclusions include exclusions for "expected or intended injury", "business", and "professional services."

32.     Additionally, the Underlying Complaint includes allegations of failure to pay HCEII, HOA dues and assessments.  The Policies limit coverage for "Loss Assessment" only to the "insured premises" as defined by the Policies.  Because the Underlying Complaint does not contain any claims for dues or assessments in connection with the "insured premises", Amica has no duty to defend or indemnify Defendants against any claimed HOA dues and assessments.

33.     Additionally, Amica has no duty to defend or indemnify Defendants under the Policies against claims for punitive damages and/or claims for attorneys' fees, which are not

covered per the express terms of the Policies.  Utah law also precludes providing coverage for punitive damages.  U.C.A. §31A-20-101.

34.     Amica is currently providing a defense for Mr. Frank and SMR in the Underlying Action, but seeks a judicial determination that Amica has no duty to defend or indemnify any of the Defendants against the Underlying Action.

35.     An actual dispute and controversy has arisen between Amica and Defendants regarding whether there is coverage available under the Polices for the allegations stated in the Underlying Complaint.

36.     Amica has complied with all of its contractual and legal obligations concerning this matter, including a diligent investigation into the claims made, and providing a defense in the Underlying Action under a full reservation of rights, pending a decision on this action regarding whether coverage exists.

37.     Amica seeks a declaratory judgment that it has no duty to defend or indemnify Defendants against the Underlying Action.

38.     Accordingly, a judicial determination is necessary and appropriate at this time to determine the respective rights of Amica and Defendants under the Policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Amica prays for the following relief:

1.  For a declaration that:

    a.   Amica has no duty to defend or indemnify Defendants against the Underlying

          Action.

    b.   For such other and further relief as the Court deems just and proper.

DATED this 9th day of October, 2020.

                    STRONG & HANNI

                    */s/ Sadé A. Turner*
                    Sadé A. Turner
                    Karmen Schmid
                    *Attorneys for Plaintiff Amica Mutual Insurance*
                    *Company*

S